1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                             **DISTRICT OF NEVADA**

10                                      * * *

11    Kristi Noel O'Brien,                        Case No. 2:20-cv-01673-BNW

12                          Plaintiff,
                                                  **ORDER re ECF Nos. 20 and 23**
13            v.

14    Kilolo Kijakazi,*

15                          Defendant.

16

17          This case involves review of an administrative action by the Commissioner of Social

18    Security denying Plaintiff[1] Kristi Noel O'Brien's application for disability benefits and

19    supplemental security income under Titles II and XVI of the Social Security Act, respectively.

20    The Court reviewed Plaintiff's motion to remand (ECF No. 20), filed May 17, 2021, and the

21    Commissioner's countermotion to affirm and response to Plaintiff's motion to remand (ECF Nos.

22    23, 24), filed July 16, 2021. Plaintiff replied on August 4, 2021. ECF No. 25.

23          The parties consented to the case being heard by a magistrate judge in accordance with 28

24    U.S.C. § 636(c) on September 16, 2020. ECF No. 3. This matter was then assigned to the

25    undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id.*

26    _____

27          * Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule
      of Civil Procedure 25(d).
             [1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for
28    purposes of this Order.

I.      **BACKGROUND**

1.      **Procedural History**

On November 4, 2016,[2] Plaintiff applied for supplemental security income under Title XVI of the Act, alleging an onset date of June 1, 2016. ECF No. 18-1[3] at 208–17. And on November 17, 2016,[4] Plaintiff applied for disability benefits under Title II of the Act, alleging the same onset date. *Id*. at 218–23.[5] Her claim was denied initially and on reconsideration. *Id*. at 138–41; 144–50.

A hearing was held before an Administrative Law Judge ("ALJ") on August 20, 2019. *Id*. at 41–68. On October 25, 2019, ALJ David K. Gatto issued a decision finding that Plaintiff was not disabled. *Id*. at 19–34. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on July 20, 2020. *Id*. at 7–12. Plaintiff, on September 11, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). *See* IFP App. (ECF No. 1).

II.     **DISCUSSION**

1.      **Standard of Review**

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

---

[2] Plaintiff's application for supplemental security income is dated November 4, 2016. *See* ECF No. 18-1 at 217. The record also provides that the Social Security Administration corresponded with Plaintiff, noting an application filing date of November 23, 2016. *Id*. at 229.

[3] ECF No. 18 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. Notice of Electronic Filing (ECF No. 18). All citations to the Administrative Record will use the CM/ECF page numbers.

[4] Plaintiff's application for disability benefits is dated November 17, 2016. *See* ECF No. 18-1 at 223. The record also provides that the Social Security Administration corresponded with Plaintiff, noting an application filing date of November 18, 2016. *Id*. at 225.

[5] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).

obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2.    Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.

1   *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[6] If the

2   individual does not have a severe medically determinable impairment or combination of

3   impairments, then a finding of not disabled is made. If the individual has a severe medically

4   determinable impairment or combination of impairments, then the analysis proceeds to step three.

5          Step three requires the ALJ to determine whether the individual's impairments or

6   combination of impairments meets or medically equals the criteria of an impairment listed in 20

7   C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If

8   the individual's impairment or combination of impairments meets or equals the criteria of a

9   listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.

10  20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not

11  meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds

12  to step four.

13         But before moving to step four, the ALJ must first determine the individual's residual

14  functional capacity ("RFC"), which is a function-by-function assessment of the individual's

15  ability to do physical and mental work-related activities on a sustained basis despite limitations

16  from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the

17  ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the

18  symptoms can reasonably be accepted as consistent with the objective medical evidence and other

19  evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements

20  about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

21  substantiated by objective medical evidence, the ALJ must make a finding on the credibility of

22  the individual's statements based on a consideration of the entire case record. The ALJ must also

23  consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and

24  SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

25

26

27         [6] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224

28  (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. ECF No. 18-1 at 25–34.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2016. *Id*. at 25.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: asthma, degenerative changes in the shoulders, fibromyalgia, irritable bowel syndrome, migraines, mild degenerative disc disease in the cervical and lumbosacral spine, right elbow cubital tunnel syndrome, right foot calcaneal spur, and right hand trigger fingers. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically citing to 1.02, 3.02, 3.03, and 11.14. *Id*. at 27.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform "light" work with the following exceptions: She can occasionally climb ramps or stairs; she can occasionally balance, stoop, kneel, and crouch; she can have occasional exposure to temperature

extremes; she can frequently finger and handle, bilaterally; she can never climb ladders, ropes, or scaffolds; she can never crawl; and she can never have exposure to hazards such as heights or dangerous machinery. *Id*.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a sales clerk (as generally and actually performed) and as a server (as generally performed). *Id*. at 32.

The ALJ could have stopped at step four of the sequential evaluation process, as he found that Plaintiff could perform past relevant work. Nonetheless, he proceeded to step five and found, in the alternative, that Plaintiff could perform other jobs that exist in significant numbers in the national economy.[7] *Id*. at 32–33. Specifically, he found that Plaintiff can work as a cafeteria attendant, information clerk, and routing clerk. *Id*. at 33. The ALJ then concluded that Plaintiff was not under a disability at any time from June 1, 2016 through the date of his decision. *Id*.

**3.      Analysis**

**a. Whether the ALJ properly assessed the opinion of examining physician Kevin Ramsey, M.D.**

**i. Dr. Ramsey's opinion**

Dr. Kevin Ramsey, M.D. is a state agency physician who reviewed Plaintiff's medical records and conducted a one-time consultative examination of her on September 25, 2017, at the Social Security Administration's request. ECF No. 18-4 at 7, 11–12.

Dr. Ramsey assessed Plaintiff's general appearance as casual and her behavior as cooperative. *Id*. at 5. He opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. *Id*. at 3. He also assessed that Plaintiff could occasionally climb ramp/stairs (but never climb ladders/scaffolds); balance; stoop/bend; kneel; crouch/squat; and crawl. *Id*. Additionally, he determined that Plaintiff did not require an assistive device to ambulate for short distances on a level surface. *Id*.

Moreover, Dr. Ramsey noted that Plaintiff had limitations with respect to reaching, fingering, and handling objects, but he no found that she had no limitations with hearing, seeing,

---

[7] The ALJ, therefore, determined at both steps four and five that Plaintiff was not disabled.

speaking, or travelling. *Id*. at 5. He further assessed that Plaintiff did not have environmental restrictions caused by her impairments except that she could not tolerate heights. *Id*.

Dr. Ramsey assessed Plaintiff's movements as "moderately slowed" and that Plaintiff was able to sit comfortably in a chair without shifting; she was able to get on and off the exam table without difficulty; she was able to stand up from a sitting position with "mild difficulty;" and she was able to sit up from a supine position with "mild difficulty." *Id*. at 9.

Additionally, the examining physician opined that Plaintiff could stand and/or walk for at least two hours in an eight-hour workday and sit for at least six hours in an eight-hour workday. *Id*. at 3. He also found that Plaintiff would need to alternate between standing and sitting but that "standard breaks and lunch periods" would *not* provide sufficient relief to allow her to work for eight hours. *Id*. at 3, 5.

Finally, non-examining state agency doctors summarized Dr. Ramsey's findings as suggesting that Plaintiff could perform sedentary work. *See, e.g.,* ECF No. 18-1 at 100. While a reader could infer that Dr. Ramsey implicitly suggested that Plaintiff could perform sedentary work based on his findings regarding what she can lift and/or carry and how long she can stand and/or walk in a typical workday, Dr. Ramsey's report does not explicitly make such a determination. *See* ECF No. 18-4 at 3.

### ii. The ALJ's decision

The ALJ gave "little" weight to Dr. Ramsey's finding that Plaintiff would be limited to two hours of standing and/or walking in an eight-hour workday because she "demonstrated full range of motion of the bilateral lower extremities, normal reflexes in the bilateral lower extremities, negative straight leg raising, and only mild difficulty toe-heal walking and squatting and rising." ECF No. 18-1 at 30–31. According to the ALJ, Dr. Ramsey's standing/walking limitation was, therefore, "likely based on the claimant's subjective complaints without clinical correlation." *Id*. at 31.

However, the ALJ assigned "significant weight to the remainder of [Dr. Ramsey's] opinion[,]" reasoning that the doctor personally examined Plaintiff and his assessment "is generally supported by his findings." *Id*. at 30.

### iii. The parties' arguments

Plaintiff moves to remand, arguing that the ALJ did not provide "specific and legitimate" reasons for discounting examining physician Dr. Ramsey's opinion, namely his finding that Plaintiff could not work an eight-hour day with only the standard breaks and lunch periods. ECF No. 20 at 5, 8. She adds that the ALJ assigned significant weight to aspects of Dr. Ramsey's opinion but failed to incorporate these opinions into the RFC finding. *Id*. at 7. And, as a result, this omission constituted a rejection of the examining doctor's opinion. *Id*. at 8. Finally, Plaintiff notes that while the ALJ is not bound to accept all aspects of an examining physician's opinion, he must explain why he has rejected all or parts of the opinion, particularly those that are probative. *Id*.

The Commissioner counters that the ALJ did, in fact, reject Dr. Ramsey's finding that Plaintiff could not work an eight-hour workday with standard breaks in determining Plaintiff's RFC. ECF No. 23 at 5. She adds that "Dr. Ramsey's statement that Plaintiff is incapable of working an 8-hour day with standard breaks is an opinion on the ultimate issue of disability, which is not a medical opinion under the regulations" and, therefore, the ALJ "is not required to give such a statement any special significance." *Id*. at 6.

Plaintiff replies that the ALJ "did not give a logical or rational reason for rejecting Dr. Ramsey's opinion. In fact, he provided no reason at all." ECF No. 25 at 3. She further counters the Commissioner's second argument, arguing that Dr. Ramsey's opinion regarding Plaintiff's inability to work an eight-hour workday with standard breaks is not an issue of ultimate disability but rather a "work-related limitation" that is similar to other assessed limitations like Plaintiff's ability to occasionally lift 20 pounds. *Id*. at 4.

### iv. Whether the ALJ provided "specific and legitimate" reasons for discounting the opinion of examining physician Dr. Kevin Ramsey

The Ninth Circuit classifies medical opinions into three hierarchical categories: (1) treating physicians (i.e., those who treat the plaintiff), (2) examining physicians (i.e., those who examine but do not treat the plaintiff), and (3) non-examining physicians (i.e., those who do not

treat or examine the plaintiff).[8] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2008) ("Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.").

The ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1164 (internal quotation marks and citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* This means that the ALJ "'must do more than offer his conclusions; he must set forth his own interpretations and explain why they, rather, than the doctor['s], are correct.'" *Belanger v. Berryhill*, 685 Fed. App'x 596, 598 (9th Cir. 2017). This is a necessary step so that the reviewing court does not speculate as to the basis of the findings when determining whether substantial evidence supports the ALJ's decision. Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

A claimant's RFC is the *most* a claimant can still do despite her limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)); Social Security Ruling ("SSR") 96-8p (an RFC assessment is ordinarily the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule"). In assessing a claimant's RFC, the ALJ must consider all of the relevant evidence in the record. *See* 20 C.F.R.

---

[8] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, Plaintiff applied for benefits in November of 2016. ECF No. 18-1 at 208–17; 218–23. This, therefore, would make the old regulations discussed above applicable to Plaintiff's claims. 20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017, the rules in § 404.1527 apply.").

§ 404.1545(a)(2), (3). If an RFC assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." SSR 96-8p; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (explaining that an ALJ is not required to discuss all the evidence presented but must explain the rejection of significant probative evidence).

Here, the "specific and legitimate" standard applies because Dr. Ramsey, an examining physician, provided an opinion that was contradicted by non-examining state doctor Berming Pan, M.D. *Carmickle*, 533 F.3d at 1164; *see* ECF No. 18-1 at 78, 81. Dr. Pan opined that Plaintiff could stand and/or walk for six hours in an eight-hour day and perform "light" work whereas Dr. Ramsey opined that Plaintiff could stand and/or walk for at least two hours in an eight-hour day and could not work an eight-hour day without receiving more than the standard breaks and lunch periods. *Compare* ECF No. 18-1 at 78, 81 *with* ECF No. 18-4 at 3, 5.

The ALJ purportedly gave "significant weight" to Dr. Ramsey's opinion (with the exception of the two-hour standing and/or walking limitation). ECF No. 18-1 at 30–31.

Dr. Ramsey opined that "standard breaks and lunch periods" would *not* provide sufficient relief to allow Plaintiff to work an eight-hour workday.[9] ECF No. 18-4 at 3, 5. But the ALJ's RFC assessment did not, in any way, reflect this limitation identified by Dr. Ramsey, as the ALJ did not include or exclude any limitations with respect to taking (additional or extended) breaks during the eight-hour workday. Nor did the ALJ explain why he did not include in the RFC assessment Dr. Ramsey's findings that Plaintiff could not work an eight-hour day with only standard breaks and lunch periods. Yet, the ALJ explained that the RFC "is supported by the

_____

[9] The Court agrees with Plaintiff that Dr. Ramsey's opinion regarding Plaintiff's inability to work an eight-hour workday with standard breaks is not an issue of ultimate disability but rather a "work-related limitation" that is similar to other assessed limitations like Plaintiff's ability to occasionally lift 20 pounds or stand and/or walk for two hours. The Commissioner relies on 20 C.F.R. § 404.1527(d)(1)–(3) to argue the opposite—that Dr. Ramsey's opinion is one "on the ultimate issue of disability." ECF No. 23 at 6. But this cited Regulation provides examples of opinions that constitute "administrative findings that are dispositive of a case" and Dr. Ramsey's opinion does not fit into these categories (e.g., an opinion that expressly states that a plaintiff is "disabled" or "unable to work"; an opinion that states whether a plaintiff's impairments meet or equal a Listing). 20 C.F.R. § 404.1527(d)(1)–(3). Additionally, according to this Regulation, the ALJ will *consider* opinions relating to a plaintiff's RFC but the ultimate decision is left to the ALJ. 20 C.F.R. § 404.1527(d)(2). And, as discussed above, when the ALJ makes his ultimate findings, he must, nonetheless, explain these findings. *See, e.g., Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)) ("The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

1  medical opinions of Drs. Pan, Arnow, and Ramsey[.]" ECF No. 18-1 at 31. Furthermore, the

2  ALJ—at steps four and five of the sequential evaluation process—found that Plaintiff could work

3  as a cafeteria attendant, routing clerk, information clerk, sales clerk, and server without the need

4  for any (additional or extended) breaks. ECF No. 18-1 at 32–33.

5           Because the ALJ did not offer any specific explanation as to why he implicitly rejected

6  some of Dr. Ramsey's findings, the ALJ's RFC assessment is not supported by substantial

7  evidence.[10] *See* SSR 96-8p ("The RFC assessment must always consider and address medical

8  source opinions. If the RFC assessment conflicts with an opinion from a medical source, the

9  adjudicator must explain why the opinion was not adopted."); *see also Regennitter v. Comm'r of*

10  *Soc. Sec. Admin.,* 166 F.3d 1294, 1299 (9th Cir. 1999) (citing *Embrey v. Bowen,* 849 F.2d 418,

11  421–22 (9th Cir. 1988)) ("The ALJ must do more than offer his own conclusions. He must set

12  forth his own interpretations and explain why they, rather than the doctors', are correct."); *see*

13  *also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) ("By disregarding those opinions and

14  making contrary findings, [the ALJ] effectively rejected them."). Accordingly, the Court finds

15  that the ALJ erred. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where an ALJ does

16  not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one

17  medical opinion over another, he errs."); *see also Lewin*, 654 F.3d at 634 ("The ALJ's findings

18  "should be as comprehensive and analytical as feasible, and where appropriate, should include a

19  statement of subordinate factual foundations on which the ultimate factual conclusions are

20  based.").

21           The next step is to determine whether the ALJ's error is harmless. An ALJ's error is

22  harmless only if it is found to be "inconsequential to the ultimate nondisability determination"

23  and if the court "can confidently conclude that no reasonable ALJ, when [not making the same

24  error] could have reached a different disability determination." *Stout*, 454 F.3d at 1055–56. Here,

25

26

27           [10] The Commissioner argues that the ALJ "implicitly found that Plaintiff was capable of performing work on
a 'regular and continuing basis'" by not including Dr. Ramsey's limitation regarding additional or extended breaks to
28  the Vocational Expert. ECF No. 23 at 5–6. But this reasoning supports Plaintiff's claim that the ALJ implicitly
rejected Dr. Ramsey's opinion without providing the requisite "specific and legitimate" reasoning for doing so.

another ALJ, crediting Dr. Ramsey's opinion, could have reached a different disability determination. Accordingly, this error was not harmless.

### b. Whether the Court should remand for an award of benefits or for further proceedings

Plaintiff argues that a remand for an immediate award of benefits is appropriate. ECF No. 20 at 9. The Commissioner disagrees, arguing that the ALJ's decision should be affirmed but adding that, if error is found, a remand for further proceedings is required. ECF No. 23 at 7.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citations omitted). The credit-as-true standard is met if three conditions are satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, although the ALJ erred in not applying Dr. Ramsey's limitations to Plaintiff's RFC determination (or not providing "specific and legitimate" reasons for rejecting the examining doctor's opinion), further proceedings would be useful. This is because Dr. Ramsey did not specify exactly what type of work, if any, Plaintiff could ultimately perform and there are conflicting medical opinions regarding what type of work Plaintiff could perform (e.g., non-examining state agency doctor Jon Arnow, M.D. opined that Plaintiff could perform sedentary work whereas non-examining state agency doctor Berming Pan, M.D. opined that Plaintiff could

perform light work). Accordingly, the Court will remand for further proceedings consistent with this Order.

**III.    CONCLUSION AND ORDER**

      **IT IS ORDERED** that Plaintiff's motion to remand (ECF No. 20) is **GRANTED**.

      **IT IS FURTHER ORDERED** that, on remand, the ALJ must reassess Plaintiff's RFC in light of Dr. Ramsey's findings and determine whether Plaintiff can perform past relevant work (at step four) or whether there are other jobs existing in significant numbers in the national economy that Plaintiff can perform (at step five).

      **IT IS FURTHER ORDERED** that the Commissioner's countermotion to affirm and response to Plaintiff's motion to remand (ECF Nos. 23, 24) is **DENIED**.

      **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this case.

DATED: January 11, 2022.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE